Entered: January 18th, 2017
Signed: January 17th, 2017



**S. MARTIN TEEL, JR.**
**U.S. BANKRUPTCY JUDGE**
SITTING BY DESIGNATION

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Greenbelt**

| | |
|---|---|
| IN RE: | : |
| | : |
| HENRY ALLEN ZINN, | : Case No. 13-14270-LSS |
| | :      (Chapter 13) |
| Debtor. | : |
| ——————————————— | : |
| | : |
| HENRY ALLEN ZINN, | : |
| | : |
| Plaintiff, | : |
| | : Adversary Proceeding |
| vs. | : No. 13-00708-LSS |
| | : |
| MORTGAGE LENDER OF AMERICA | : |
| AND COMPANY, INC., *et al.*, | : Not for Publication in |
| | : West's Bankruptcy Reporter |
| Defendants. | : |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | |

MEMORANDUM DECISION AND ORDER RE MOTION OF
U.S. BANK AND CITIMORTGAGE TO DISMISS MONETARY DAMAGE
<u>CLAIMS ASSERTED AGAINST THEM BY JOSEPH AND BILLIE JOE ZINN</u>

     The debtor, Henry Zinn ("Henry") commenced this adversary

proceeding seeking to determine the validity of certain deeds of

trust against two parcels of land in which he, his son, Joseph R.

Zinn ("Joseph"), and his daughter-in-law and Joseph's wife, Billie Joe Zinn ("Billie Joe") have or had an interest. U.S. Bank, N.A., as Trustee for CMSI REMIC 2008-02 Pass Through Certificates Series 2008-02, ("U.S. Bank") was authorized to intervene in this adversary proceeding. U.S. Bank, as intervenor, filed a *Complaint to Quiet Title and for Declaratory Relief* against Henry, Joseph, Billie Joe, and Green Tree Servicing, Inc. In turn, Joseph and Billie Joe filed an *Answer and Counterclaim, Cross-Claim, and Third Party Complaint with Jury Demand* (Dkt. No. 136), asserting, as pertinent here, a counterclaim against U.S. Bank and third party claims against CitiMortgage, Inc. ("CitiMortgage"), that seek monetary damages against those two parties.[1] U.S. Bank and CitiMortgage have filed a motion (Dkt. No. 157-1) to dismiss those money damage claims asserted against them.

I

FACTS

The claims against U.S. Bank and CitiMortgage are contained in Joseph's and Billie Joe's *Answer and Counterclaim, Cross-Claim, and Third Party Complaint with Jury Demand* (Dkt. No. 136), which, as against U.S. Bank and CitiMortgage, sets forth the following facts, which, for purposes of the motion to dismiss,

---

[1] In asserting their claims, Joseph and Billie Joe refer to themselves as the plaintiffs, and refer to the parties against whom the monetary damage claims are pursued as the defendants.

2

are accepted as true (to the extent not merely conclusory allegations instead of well-pled facts).

In August 2002, Henry and his son, Joseph, purchased a 46.7 acre parcel of property in Montgomery County, Maryland (the "Original Parcel").[2]  Later, Henry, Joseph, and Joseph's wife, Billie Joe, acquired an adjoining unimproved parcel of 26.7 acres of real property located in the same county (the "Additional Parcel").  In 2003, Henry, Joseph, and Billie Joe obtained construction loans from Severn Savings Bank to construct two homes on the Original Parcel, one for Henry and one for Joseph and Billie Joe.  All three Zinns served as the obligors for the two loans and each loan was secured by deeds of trust on both the Original and the Additional Parcels.  The loans, for $650,000 and $360,000 individually, totaled $1,010,000.

At the end of 2007, Henry, Joseph, and Billie Joe endeavored to divide the Original Parcel into two tracts, with each tract surrounding one home, and to take out refinancing loans so that Henry would be the sole owner and obligor on his own home and surrounding tract of land, and Joseph and Billie Joe would be the joint owners and obligors for their own home and its surrounding tract of land.

---

[2]  Other filings in his adversary proceeding make it evident that part of the Original Parcel was lost to condemnation, so only 41.65 acres of the Original Parcel remain.  However, for purposes of this decision, I will still refer to the entirety of what Henry and Joseph bought as the Original Parcel.

The Zinns engaged Mortgage Lenders of America and Company, Inc. ("Mortgage Lenders"), for the purpose of creating the new loans. Representatives of Mortgage Lenders indicated that two mortgage loans could be created, with one secured by a five-acre parcel surrounding Henry's home ("Parcel 1") and one securing a five-acre parcel around the home of Joseph and Billie Joe ("Parcel 2"). As instructed by Mortgage Lenders, the Zinns had a land surveyor prepare metes and bounds descriptions of Parcel 1 and Parcel 2, as well as a plat drawing. Mortgage Lenders obtained appraisals of each five-acre parcel. Mortgage Lenders assured the Zinns that the transactions would go off as represented, and in reliance on Mortgage Lenders' representations, the Zinns proceeded with the transactions. The transactions did result in satisfying the debts owed to Severn Savings Bank, but the transactions did not otherwise go off as envisioned by the Zinns.

First, as part of the transactions, the Zinns executed two quit claim deeds that, unbeknownst to them, transferred ownership of the properties with results unintended by the Zinns: (1) the first--executed on February 27, 2008, and recorded on August 8, 2008--transferred Henry's interest in the Additional Parcel to Joseph and Billie Joe, thus making Joseph and Billie Joe joint owners of the Additional Parcel; (2) the second--executed on February 27, 2008 and recorded more than a year later, on October

20, 2009--conveyed Joseph's interest in the Original Parcel to Henry, making Henry the sole owner of the Original Parcel.  Thus, as a result of the Zinn's execution of the two quit claim deeds, the Original Parcel (on which both Henry's home and the home of Joseph and Billie Joe sit), is now solely owned by Henry, and the unimproved Additional Parcel is now owned jointly by Joseph and Billie Joe.

Second, the deeds of trust executed pursuant to the transactions were not as envisioned by the Zinns: (1) the first deed of trust (the "*Henry Deed of Trust*"), executed by Henry in favor of Mortgage Lenders on February 27, 2008 and recorded on October 20, 2009, secured the $401,000 loan to Henry with the collateral consisting of the entire Additional Parcel rather than simply Parcel 1 of the Original Parcel; (2) the second deed of trust (the "*Joseph and Billie Joe Deed of Trust*"), executed by Joseph and Billie Joe in favor of UMS, LLC ("UMS") on February 27, 2008, and recorded on August 8, 2008, secured the $856,000 loan to Joseph and Billie Joe with collateral also consisting of the entire Additional Parcel rather than Parcel 2 of the Original Parcel.  The Zinns never offered the entirety of the Original Parcel nor any portion of the Additional Parcel as collateral for their loans.  They were unaware that had the transactions been carried out as conceived and described by Mortgage Lenders and two separate parcels of land had been created from the Original

Parcel, that would have been an illegal subdivision of the Original Parcel in violation of the relevant zoning ordinances.

As a result of the faulty transactions, the Original Parcel was left unencumbered and the Additional Parcel, which the Zinns had never discussed with Mortgage Lenders and had not intended to serve as collateral for either loan, is now encumbered for repayment of both loans.  Furthermore, the *Henry Deed of Trust* erroneously represented that the collateral listed (the Additional Parcel) was Henry's principal residence and the *Joseph and Billie Joe Deed of Trust* erroneously represented that the collateral listed (the Additional Parcel) was the principal residence of Joseph and Billie Joe.

Joseph and Billie Joe assert that they executed the loan documents with the explicit understanding, reached through numerous conversations with Mortgage Lenders and confirmed by the loan origination documents, that the security for each of the loans would be the respective five-acre parcels.  Joseph and Billie Joe maintain that they would not have executed the documents had they been aware of the need to include the entire Original Parcel or the Additional Parcel as collateral for the loans.

The *Joseph and Billie Joe Deed of Trust* listed UMS as the lender for their loan and had a principal amount of $856,000. However, at all times relevant to the transaction before the

6

*Joseph and Billie Joe Deed of Trust* was signed, Joseph and Billie Joe believed that they were dealing with Mortgage Lenders and that Mortgage Lenders had drafted the settlement documents. Joseph and Billie Joe contend that there were other changes in the settlement agreement that did not comport with the original settlement documents and good faith estimates, including the lack of a loan discount they had expected to receive and the use of a higher interest rate than was originally estimated and presented to Joseph and Billie Joe.  In October 2008, an attorney, on behalf of the Zinns, wrote a letter to Mortgage Lenders, UMS, CitiMortgage, and others, detailing the problems with the transaction and requesting that the problems be rectified.  The Zinns and their attorney continued to contact the pertinent parties in this case about fixing the problems with the new mortgages but the problems were never resolved.

CitiMortgage became the loan servicer on the Joseph and Billie Joe refinancing loan immediately after the closing and remains the loan servicer today.  Joseph and Billie Joe allege that in May 2009, after repeated inquiries and requests for rectification of the faulty transaction, CitiMortgage advised them to enroll in a loan modification program, indicating that doing so would allow CitiMortgage to opportunity to rectify the title problems created by the faulty transaction. In reliance on this advice, Joseph and Billie Joe applied for the program and,

7

in May 2009, began making reduced mortgage payments of $4,567.24 per month (instead of the original $6,636.41 per month) in accordance with the program.  They continued making these reduced payments for about fourteen months.

In June 2010, CitiMortgage advised Joseph and Billie Joe that they in fact did not qualify for the program and they would have to resume full mortgage payments and cure the arrearage of approximately $50,000 resulting from their months of reduced mortgage payments.  From May 2009 through June 2010, while Joseph and Billie Joe were paying reduced mortgage payments in compliance with the loan modification program, CitiMortgage undertook no efforts to correct the title problems.  In 2010, after no companies involved in the faulty transaction and the servicing of their loan undertook to rectify the situation that had left Joseph and Billie Joe without title to their home, Joseph and Billie Joe stopped making payments in an attempt to pressure the companies into taking action.

UMS assigned the *Joseph and Billie Joe Deed of Trust* to CitiMortgage on June 19, 2011, via an instrument recorded on July 12, 2011.  Joseph and Billie Joe assert that at the time of the assignment, CitiMortgage, which had been servicing the loan since the closing date, was on notice that the loan was not in performing status and had actual or constructive knowledge of the claims and defenses by Joseph and Billie Joe related to the loan.

8

On or about February 2, 2012, an altered copy of the *Henry Deed of Trust* was recorded in the land records of Montgomery County (the "*Altered Henry Deed of Trust*") stating that the deed of trust was being re-recorded to correct the legal description of the land securing the refinancing loan to Henry. This *Altered Henry Deed of Trust* changed the legal description of the collateral for the refinancing loan to Henry to the Original Parcel, while also still including as an attachment the legal description of the collateral that had been attached to the original *Henry Deed of Trust* (the Additional Parcel). Joseph and Billie Joe assert that this deed of trust was fraudulently altered as neither Joseph and Billie Joe nor Henry Zinn consented to or authorized the recording of this new deed of trust. None of the Zinns ever offered the entire Original Parcel as collateral for either of the loans, and Joseph and Billie Joe maintain that the parties had never discussed the possibility of the entire Original Parcel being offered as collateral. Joseph and Billie Joe argue that this *Altered Henry Deed of Trust* adversely affects their title to their property, resulting in damages. It bears noting, however, that the *Altered Henry Deed of Trust* does not secure the note that was assigned to CitiMortgage and eventually assigned to U.S. Bank, so it is not directly relevant to Joseph's and Billie Joe's claims against CitiMortgage an U.S. Bank.

On or about January 14, 2014, CitiMortgage assigned the
*Joseph and Billie Joe Deed of Trust* to U.S. Bank.  Joseph and
Billie Joe maintain that at the time of assignment they still
were not performing under the terms of the loan and U.S. Bank had
actual or constructive knowledge of their claims and defenses
related to the loan.

II

FAIR CREDIT REPORTING ACT CLAIMS

In Count III, Joseph and Billie Joe allege that CitiMortgage
and U.S. Bank are responsible for violations of the Fair Credit
Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* *See* Dkt. No.
136, at ¶¶ 47-52.  Joseph and Billie Joe allege that CitiMortgage
and U.S. Bank "wrongfully, improperly, and illegally . . .
reported negative information as to [Joseph and Billie Joe] to
one or more Credit Reporting Agencies, resulting in [Joseph and
Billie Joe] having negative information on their credit reports
and the lowering of their FICO scores." *See* Dkt. No. 136, at
¶ 49.  Joseph and Billie Joe assert their Fair Credit Reporting
Act claims against CitiMortgage and U.S. Bank relying on 15
U.S.C. § 1681s-2(b), which deals with violations of the FCRA by
furnishers of information to consumer reporting agencies, for
which damages may be recovered under 15 U.S.C. § 1681(o)
(negligent noncompliance) and § 1681n(a)(2) (willful
noncompliance).

10

A plaintiff asserting a violation of § 1681s-2(b) must plead and establish three elements: (1) that he or she notified the consumer reporting agency of the dispute regarding the reported information, (2) that the consumer reporting agency notified the defendant furnisher(s) of the dispute, and (3) that the furnisher(s) then failed to investigate and modify any inaccurate information.  *See Ausar-El v. Barclay Bank Delaware*, No. PJM-12-0082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012).  Upon such elements being established, a defendant's negligent failure to investigate and modify such disputed, inaccurate information results in civil liability under 15 U.S.C. § 1681o.  A defendant's willful failure to do so results in civil liability under 15 U.S.C. § 1681n.  It follows that "under the statutory language of § 1681s-2(b), a furnisher has no duty to investigate a credit dispute if a consumer directly notifies it of a dispute."  *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *10-11 (D. Md. Aug. 4, 2011).

In this case, Joseph and Billie Joe have alleged that CitiMortgage and U.S. Bank reported negative information regarding them to one or more credit reporting agencies, detrimentally impacting Joseph's and Billie Joe's credit reports and FICO scores.  *See* Dkt. No. 136 at ¶ 49.  However, nowhere have Joseph and Billie Joe alleged that they reported the dispute to one or more credit agencies or that an agency notified either

11

CitiMortgage or U.S. Bank of the alleged inaccuracies.  As such,
Joseph and Billie Joe have not adequately pled a violation of
§ 1681s-2(b).  *See Allen*, 2011 WL 3425665, at *10-11 (dismissing
an FCRA claim against CitiMortgage where the plaintiffs alleged
they had contacted the credit reporting agencies and CitiMortgage
about the inaccuracy in a plaintiff's credit report because the
plaintiff failed to allege that a credit reporting agency had
notified CitiMortgage about the inaccuracy, as § 1681s-2(b)
plainly requires).  Joseph and Billie Joe have failed to
adequately plead their FCRA claim against CitiMortgage and U.S.
Bank, and in response to the motion to dismiss, they have not
alleged any facts that would enable them to plead a valid FCRA
claim against CitiMortgage or U.S. Bank.  Thus, the FCRA claim
against CitiMortgage and U.S. Bank must be dismissed, with leave
to amend.

III

MARYLAND CONSUMER PROTECTION ACT CLAIMS

In Count IV, Joseph and Billie Joe bring a claim against
CitiMortgage and U.S. Bank under the Maryland Consumer Protection
Act ("MCPA"),[3] Md. Code Ann., Com. Law § 13-101 *et seq.*, alleging
that CitiMortgage and U.S. Bank engaged in unfair or deceptive

---

[3]  Joseph and Billie Joe erroneously termed this Act the
Maryland Unfair or Deceptive Trade Practices Act in their *Answer
and Counterclaim, Cross-Claim, and Third Party Complaint with
Jury Demand.*

12

practices, including fraudulent concealment.  The statute, in relevant part, prohibits engaging "in any unfair or deceptive trade practice" in the extension of credit (§ 13-302(4)) or in the collection of consumer debts (§ 13-303(5)).  To state a claim under the MCPA, a plaintiff must allege that: (1) the defendant engaged in unfair or deceptive trade practices or made one or more misrepresentations, (2) that the plaintiff relied upon, and (3) thus suffered actual injury.  *Boardley v. Household Fin. Corp. III*, 39 F.Supp.3d 689, 712 (D. Md. 2014).

Joseph and Billie Joe allege in paragraph 55 of their pleading (Dkt. No. 136) that the defendants' "unfair or deceptive trade practices" include:

(1) "making false and misleading oral and written statements and other representations which had the capacity, tendency, or effect of deceiving or misleading [Joseph and Billie Joe]" (citing Md. Code Ann. Com. Law III § 13-301(1)),

(2) "failing to state a material fact if the failure deceives or tends to deceive" (citing Md. Code Ann. Com. Law III § 13-301(3)), and

(3) "engaging in deception, fraud, false pretense, false premise, misrepresentation, and knowing concealment and omission of material facts with the intent that [Joseph and Billie Joe] relied thereon in connection with the sale of consumer services" (citing Md. Code Ann. Com. Law III § 13-301(9)(i)).

Joseph and Billie Joe assert these claims in paragraph 55 against the original lenders (Mortgage Lenders and UMS) as well as U.S. Bank and CitiMortgage without distinguishing among the four defendants.

A.  Joseph's and Billie Joe's MCPA Claims Against
    CitiMortgage and U.S. Bank Based on Acts Through 2010
    are Barred by the Statute of Limitations.

UMS did not assign the *Joseph and Billie Joe Deed of Trust*
to CitiMortgage until June 2011, and CitiMortgage did not assign
the deed of trust to U.S. Bank until January 2014.  Joseph and
Billie Joe do not allege any statements by U.S. Bank that support
their MCPA claims.  The only statements that Joseph and Billie
Joe have alleged either U.S. Bank or CitiMortgage made were
CitiMortgage's May 2009 statements regarding the loan
modification program and CitiMortgage's ability to rectify
Joseph's and Billie Joe's title problems by virtue of Joseph's
and Billie Joe's participation in that program.

Joseph and Billie Joe filed their MCPA claims against
CitiMortgage on May 5, 2015.  Joseph and Billie Joe allege that
in May 2009 CitiMortgage informed them of the loan modification
program and advised them that their enrollment in that program
would allow CitiMortgage to rectify the title problems caused by
the refinancing transactions.  Dkt. No. 136, at ¶ 31.  They also
allege that CitiMortgage advised them that they ultimately did
not qualify for that program in June 2010, after approximately
fourteen months of their making reduced payments in accordance
with the program.  *Id.*

Any claim based on those statements is barred by the
applicable statute of limitations, which is three years.  *See*

14

*Boardley*, 39 F.Supp.3d at 713 (citing Md. Code Ann., Cts. & Jud.
Proc. § 5-101). Maryland has adopted the "discovery rule" and
applies it generally to all civil actions, holding that the
accrual of a cause of action tolls until the claimant in fact
knows or reasonably should know of the wrong committed. *See*
*Windesheim v. Larocca*, 116 A.3d 954, 962-63 (Md. 2015) (citing
*Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981)); *Martin*
*Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 771 (4th Cir. 1995)
(same)).

     At the very latest, by June 2010, Joseph and Billie Joe were
on notice that they did not qualify for the loan modification
program, that CitiMortgage intended to hold them accountable for
the approximately $50,000 in arrears resulting from their lower
payments while they participated in the program. At that time,
Joseph and Billie Joe were also on notice that CitiMortgage had
not rectified their title problems during the approximately
fourteen months that they participated in the program and that
they could no longer participate in the loan modification program
that CitiMortgage had allegedly told them was a conduit for
fixing their title problems. However, Joseph and Billie Joe
waited until May 5, 2015, to file their claims against
CitiMortgage and U.S. Bank.

     CitiMortgage allegedly made the false statements about the
loan modification program and CitiMortgage's intention of

correcting the title problems through that program in May 2009,
more than three years before Joseph and Billie Joe sued in May
2015.  If the discovery rule is used rather than the date that
CitiMortgage made the allegedly false statements, Joseph and
Billie Joe were aware of the falsity of CitiMortgage's May 2009
statements by June 2010, also more than three years before they
sued CitiMortgage based on those statements.  Joseph's and Billie
Joe's MCPA claims are therefore barred by the statute of
limitations.[4]  For these reasons, the motion of CitiMortgage and
U.S. Bank to dismiss Count IV must be granted.

    B.  Joseph and Billie Joe Have Raised No Other Valid MCPA
        Claims Against CitiMortgage and U.S. Bank.

    Joseph and Billie Joe have failed to identify any other
statement, representation, failure to disclose material facts, or
any deception, act of fraud, false pretense, or false premise by

---

[4]  Joseph's and Billie Joe's MCPA claims are deficient in
other respects as well.  Joseph and Billie Joe have not pled
facts stating that CitiMortgage's representations, when made,
were knowingly false.  Moreover, while Joseph and Billie Joe
claim that they suffered damages as a result of CitiMortgage's
statements, they have not adequately pled how the statements
caused them "actual injury or loss" required to sustain a claim
under the Maryland Consumer Protection Act.  *See Lloyd v. Gen.
Motors Corp.*, 916 A.2d 257, 277 (Md. 2007) (citations omitted)
("We have, in earlier cases, established that, in order to
articulate a cognizable injury under the Consumer Protection Act,
the injury must be objectively identifiable. In other words, the
consumer must have suffered an identifiable loss, measured by the
amount the consumer spent or lost as a result of his or her
reliance on the sellers' misrepresentation.").

U.S. Bank or CitiMortgage that could amount to unfair or deceptive trade practices for purposes of MCPA liability.

Beyond the foregoing allegations of statements of CitiMortgage made in 2009 and 2010, the allegations of paragraph 55 of Count IV are all essentially quoted statutory language and are therefore what are considered conclusory allegations, which alone are not entitled to be accepted by the court as true for the purposes of Rule 12(b)(6) motions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). Moreover, Joseph and Billie Joe have failed to plead with particularity which defendants undertook which allegedly unfair or deceptive actions or practices.

## IV

## FRAUDULENT MISREPRESENTATION CLAIM

In Count V, Joseph and Billie Joe allege that CitiMortgage "knowingly, intentionally, and fraudulently concealed material information from [them] in connection the loan modification program and Citi[M]ortgage's ability and intentions to correct the title problems created by the Transaction." *See* Dkt. No. 136, at ¶ 60. This fraudulent misrepresentation claim against CitiMortgage relates to the same statements that form the basis of Joseph's and Billie Joe's MCPA claims. Maryland's statute of

17

limitations for fraudulent misrepresentation claims is the same as that for MCPA claims: three years. *See* Md. Code Ann. Cts. & Jud. Proc. § 5-101.  Thus, this fraudulent misrepresentation claim is also barred by the applicable statute of limitations and must likewise be dismissed.

V

BREACH OF FIDUCIARY DUTY CLAIM

In Count VI, Joseph and Billie Joe raise a claim of breach of fiduciary duty against CitiMortgage and other entities, alleging that "by their actions in contract to provide mortgage loan services, settlement and title services, and a loan program to [Joseph and Billie Joe] which was not only to be best suited to [Joseph and Billie Joe] given their stated intentions and objectives, [those entities] were "fiduciaries" in which [Joseph and Billie Joe] reposed trust and confidence. . . ." *See* Dkt. No. 136, at ¶ 67.

A.  This Claim is Barred by the Applicable Statute of Limitations.

This claim, like Joseph's and Billie Joe's fraudulent misrepresentation and MCPA claims, is barred by the statute of limitations.  Two other justifications additionally require the dismissal of this count.

B.  Maryland Does Not Recognize a Cause of Action for Breach
of Fiduciary Duty.

Joseph and Billie Joe claim that CitiMortgage and other
entities breached their fiduciary duties to Joseph and Billie Joe
by "fraudulently inducing plaintiffs, through a pattern of
fraudulent concealment and misrepresentation, to enter into a
mortgage transaction which was contrary to the plaintiffs' stated
intentions and objectives; contrary to the plaintiffs' best
interests; and contrary to the plaintiffs' preservation of their
home."  *See* Dkt. No. 136, at ¶ 68.  Joseph and Billie Joe also
claim that these breaches proximately caused them damages and
they request compensatory and punitive damages for actions they
describe as "willful, wanton, intentional, and with a callous and
reckless disregard for the rights of the plaintiffs[.]" *See id.*
at ¶ 70.

Under *Kann v. Kann*, 690 A.2d 509 (Md. 1997), and *Int'l Bhd.
of Teamsters v. Willis Corroon Corp. of Md.,* 802 A.2d 1050 (Md.
2002), Maryland does not recognize a separate, general tort
action for breach of fiduciary duty.  This court has previously
cited *Kann* for the same proposition. *See Drummond v. Freeland (In
re Freeland)*, 360 B.R. 108, 121 n.9 (Bankr. D. Md. 2006)
("Maryland does not recognize a separate tort of breach of
fiduciary relationship[.]").

The Maryland Court of Special Appeals has conceded that
Maryland law, including *Kann* and its progeny, does not

19

necessarily bar a separate cause of action for breach of fiduciary duty where the plaintiff is seeking equitable relief. *See George Wasserman & Janice Wasserman Goldstein Family LLC v. Kay*, 14 A.3d 1193, 1219 (Md. Ct. Spec. App. 2011). However, it affirmed that "[i]n a claim for monetary damages at law . . . an alleged breach of fiduciary duty may give rise to a cause of action, but it does not, standing alone, constitute a cause of action." *See id.* In *Kay*, the court noted that the allegations within the count of breach of fiduciary duty were relevant to other causes of action alleged--including fraud, tortious interference, breach of contract, and negligence--but the allegations did not constitute "a stand alone nonduplicative cause of action." *See id.* Similarly, in this case, Joseph and Billie Joe may include their allegations regarding various defendants' breaches of fiduciary duties in their other causes of action but they cannot assert breach of fiduciary duty as an independent cause of action.

C. CitiMortgage was not a Fiduciary in this Context.

Joseph and Billie Joe argue that CitiMortgage occupied a fiduciary relationship with respect to Joseph and Billie Joe because they held escrow funds on behalf of Joseph and Billie Joe. *See* Dkt. No. 158, at 11 (citing *Edwards v. Ocwen Loan Servicing, LLC*, 24 F.Supp.3d 21, 29-30 (D.D.C. 2014)). However,

20

Joseph and Billie Joe have failed to plead any mishandling of escrow funds.

Also, CitiMortgage cannot accurately be considered Joseph's and Billie Joe's fiduciary on the basis of any other aspect of its relationship with Joseph and Billie Joe. *See Parker v. Columbia Bank*, 604 A.2d 521, 532 (Md. Ct. Spec. App. 1992). *See also Willis v. Bank of Am. Corp.*, No. ELH-13-02615, 2014 WL 3829520, at *25-27 (D. Md. Aug. 1, 2014) (noting that relationships between banks and their customers are generally viewed as contractual relationships rather than fiduciary in nature and courts are reluctant to identify specific circumstances that would elevate the relationship to one of a fiduciary nature and impose greater duties on a bank than those provided for contractually); *id.* at 25("'A fiduciary relationship exists when one party is under a duty to act or give advice for the benefit of another.'" (quoting Paul Mark Sandler & James K. Archibald, *Pleading Causes Of Action in Maryland* § 3.209.A at 436 (4th ed. 2008) (citing Restatement (Second) of Torts § 874 cmt. a (1979); Restatement (Second) of Trusts § 2 cmt. b (1959)))).  For this reason as well, Joseph's and Billie Joe's breach of fiduciary duty claim against CitiMortgage fails.

VI

UNJUST ENRICHMENT CLAIMS

In Count VII, Joseph and Billie Joe bring unjust enrichment claims against CitiMortgage and U.S. Bank, seeking to hold them liable for the actions of the entities involved in the original, allegedly fraudulent refinancing transactions as those entities' "agents and assigns[.]" *See* Dkt. No. 136, at ¶ 72. Joseph and Billie Joe allege that defendants Mortgage Lenders, UMS, and others knew that the refinancing transactions, if carried out as represented, would create an illegal subdivision and, if carried out in the manner ultimately chosen by those entities, would adversely affect Joseph's and Billie Joe's title to their property; yet those defendants approved of the transactions for their own benefit and for the benefit of their assigns, CitiMortgage and U.S. Bank, and, in violation of an implied contract, charged fees that were not disclosed in advance and adversely affected Joseph's and Billie Joe's title to their property. These acts allowed all of the defendants to "reap profits at the expense of the plaintiffs." *See id*. at 27.

Joseph and Billie Joe, through their unjust enrichment claim, look to "the rules and principles of equity" and request restitution "in the form of actual damages, exemplary damages," and applicable attorney's fees." *See id*. Joseph's and Billie

22

Joe's unjust enrichment claim is partially time-barred and
otherwise inadequately pled.

In Maryland, "[a] claim of unjust enrichment is established
when: (1) the plaintiff confers a benefit upon the defendant;
(2) the defendant knows or appreciates the benefit; and (3) the
defendant's acceptance or retention of the benefit under the
circumstances is such that it would be inequitable to allow the
defendant to retain the benefit without the paying of value in
return." *Benson v. State*, 887 A.2d 525, 546 (Md. 2005) (citation
omitted); *see also Hill v. Cross Country Settlements, LLC*, 936
A.2d 343, 351 (Md. 2007). "A successful unjust enrichment claim
serves to 'deprive the defendant of benefits that in equity and
good conscience he ought not to keep, even though he may have
received those benefits quite honestly in the first instance, and
even though the plaintiff may have suffered no demonstrable
losses.'" *Hill*, 936 A.2d at 352 (quoting *Dep't of Hous. & Cmty.
Dev. v. Mullen*, 886 A.2d 900, 921 (Md. Ct. Spec. App. 2005),
*cert. denied*, 894 A.2d 546 (Md. 2006)).

Where the subject matter of the claim is governed by an
express contract between the parties, a plaintiff cannot bring a
viable claim for unjust enrichment. *See Janusz v. Gilliam*, 947
A.2d 560, 567 (Md. 2008) (citation omitted)("In Maryland, a claim
of unjust enrichment, which is a quasi-contract claim, 'may not
be brought where the subject matter of the claim is covered by an

23

express contract between the parties.'"). "Generally, courts
. . . allow unjust enrichment claims only when there is evidence
of fraud or bad faith, there has been a breach of contract or a
mutual rescission of the contract, when rescission is warranted,
or when the express contract does not fully address a subject
matter." *Cnty. Comm'rs v. J. Roland Dashiell & Sons, Inc.*, 747
A.2d 600, 608-09 (Md. 2000).

> A. The Unjust Enrichment Claims are Partially Time-Barred
> and Otherwise Precluded Due to the Contractual
> Relationship Between Joseph and Billie Joe and Each
> Defendant.

If the alleged $20,300 in extra fees charged at closing gave
rise to a claim under unjust enrichment law, that claim is barred
by the applicable statute of limitations. Joseph and Billie Joe
cannot revive that claim by now calling it an "unjust enrichment
claim."

Joseph and Billie Joe have not otherwise adequately pled an
unjust enrichment claim against CitiMortgage and U.S. Bank
because the relationship between them and each of those entities
is contractual. Joseph and Billie Joe have not alleged that
either CitiMortgage or U.S. Bank actively participated in the
refinancing transactions that Joseph and Billie Joe claim were
fraudulent; as such, those allegedly fraudulent acts committed by
other entities cannot be attributed to CitiMortgage and U.S.
Bank. *See Ramos v. Bank of Am., N.A.*, No. DKC 11-3022, 2012 WL
1999867, at *1 (D. Md. June 4, 2012) (dismissing an unjust

enrichment claim where the problematic transaction was the original loan the plaintiff received and not the transaction involving the particular defendant who brought the motion to dismiss).  Thus, the general rule applies, barring the unjust enrichment claims against CitiMortgage and U.S. Bank.

B.  Joseph and Billie Joe Have Inadequately Pled a Benefit Conferred and Inequitably or Unconscionably Retained by the Defendants.

Furthermore, Joseph and Billie Joe have not adequately alleged any benefit conferred upon CitiMortgage or U.S. Bank to support an unjust enrichment claim against either entity.  A plaintiff asserting an unjust enrichment claim must demonstrate that the defendant(s) "retained a benefit conferred by the plaintiff 'under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.'"  *Bowers v. Bank of Am., N.A.*, 905 F.Supp.2d 697, 703 (D. Md. 2012) (quoting *Hill*, 936 A.2d at 351).

While Joseph and Billie Joe request "actual damages, exemplary damages," and applicable attorney's fees in their unjust enrichment claim, unjust enrichment exists as an equitable cause of action to allow plaintiffs to recover restitution limited to the benefits Joseph and Billie Joe conferred upon the defendants that the defendants retained unjustly.  *See Bank of Am. Corp. v. Gibbons*, 918 A.2d 565, 569 (Md. Ct. Spec. App. 2007) ("The purpose of restitution . . . 'is to prevent the defendant's

25

unjust enrichment by recapturing the gains the defendant secured in a transaction.'" (quoting 1 Dan B. Dobbs, *Law of Remedies* § 4.1(1), at 552 (2d ed. 1993))). Restitution, the remedy provided by an unjust enrichment claim, is measured by the defendant's gain from the transaction and requires disgorgement of that gain. *Id.* (quoting Dobbs, *supra*, at 555). "'In an action for unjust enrichment the burden is on the plaintiff to establish that the defendant holds the plaintiff's money and that it would be unconscionable for him to retain it.'" *See id.* (quoting *Plitt v. Greenberg*, 219 A.2d 237, 241 (Md. 1966)).

### 1. Joseph and Billie Joe Have Not Specifically Alleged a Benefit Conferred Upon U.S. Bank.

In their unjust enrichment claim, Joseph and Billie Joe include a conclusory allegation that all of the defendants "reap[ed] profits at the expense of the plaintiffs[.]" Dkt. No. 136, at ¶ 73. However, in the arena of specific allegations, Joseph and Billie Joe do not allege that they ever made any mortgage payments to U.S. Bank. CitiMortgage assigned Joseph's and Billie Joe's loan to U.S. Bank on January 14, 2014, long after Joseph and Billie Joe stopped making any payments on their loan. *See* Dkt. No. 136, at ¶ 37.

The only other possible benefit conferred upon U.S. Bank is the interest in the property securing the loan. The *Joseph and Billie Joe Deed of Trust* improperly encumbers the Additional Parcel, which Joseph and Billie Joe never intended to serve as

26

security for the loan.  However, U.S. Bank and CitiMortgage have sued to quiet title, requesting the court to declare whether the deed of trust is valid.  If the court declares the deed of trust valid then the benefit of the interest in the Additional Parcel was not unconscionably retained.  If the court declares the deed of trust invalid, the defendants will not have obtained an interest in the Additional Parcel, and there will not have been a gain that must be disgorged.  Moreover, the promissory note represents funds that *were* lent to Joseph and Billie Joe and they are obligated to repay the sum of that loan.  Joseph and Billie Joe have not otherwise pled any specific benefits conferred by them upon U.S. Bank.  Thus, the unjust enrichment claim is inadequately pled as to U.S. Bank and the motion to dismiss that claim as to U.S. Bank must be granted.

2. Joseph and Billie Joe Have Not Adequately Pled a Benefit Conferred Upon CitiMortgage that CitiMortgage Unconscionably Retained.

As to any benefit conferred upon CitiMortgage, Joseph's and Billie Joe's allegations only indicate that CitiMortgage has received mortgage payments and related interest payments from Joseph and Billie Joe towards the balance of the refinancing loans, through which the their original loans from Severn Savings Bank were repaid.  This does not constitute an adequately pled conferred benefit that Joseph and Billie Joe are entitled to regain.  *See Bowers*, 905 F.Supp.2d at 703 (dismissing an unjust

27

enrichment claim against a bank for failure to plead that the bank retained any benefit inequitably where "[t]he only benefit [the plaintiff] has pled that he conferred on [the bank] is the value of his mortgage payments and interest, which were conferred in exchange for his home, property he apparently continues to own").

Moreover, most of the mortgage and interest payments CitiMortgage received from Joseph and Billie Joe cannot even rightly be considered benefits conferred upon CitiMortgage. Until June 19, 2011--the date on which UMS assigned the *Joseph and Billie Joe Deed of Trust* to CitiMortgage--CitiMortgage was merely the loan servicer. *See* Dkt. No. 136, at ¶ 31.  As the loan servicer, CitiMortgage was not retaining the loan payments; it was distributing the payments to UMS and receiving contractually specified income.

Joseph and Billie Joe stopped making payments on their loan in 2010, when CitiMortgage was still merely the loan servicer. *See* Dkt. No. 136, at ¶ 33.  Joseph and Billie Joe have only alleged one payment made to CitiMortgage from the time CitiMortgage was assigned the *Joseph and Billie Joe Deed of Trust* until now that was actually retained by CitiMortgage: "In 2012, Plaintiffs received an insurance payment of $5,621.75 based upon water damage in their house.  They delivered that check to Citimortgage for endorsement and it was never returned." *See*

28

Dkt. No. 136, at ¶ 34.  It would not be unconscionable for
CitiMortgage to retain payments to which it was contractually
entitled.  *See Bowers*, 905 F.Supp.2d at 703.  With no other
allegation of a benefit conferred upon CitiMortgage by Joseph and
Billie Joe and unjustly retained by CitiMortgage, the motion to
dismiss Joseph's and Billie Joe's unjust enrichment claim as to
CitiMortgage must be granted.

VII

NEGLIGENCE CLAIMS

In Count X,[5] a negligence claim, Joseph and Billie Joe
allege that CitiMortgage breached a duty to them: "(i) [by]
failing to exercise reasonable care and skill to correct the
negligent transfer of [Joseph's and Billie Joe's] title caused by
[Mortgage Lenders, UMS, and two other defendants]; (ii) by
advising [Joseph and Billie Joe] that the title problems would be

---

[5]  Joseph and Billie Joe seem to bring this claim against
CitiMortgage, but not against U.S. Bank.  Joseph and Billie Joe
do not include U.S. Bank in the caption of the cause of action
when they list the defendants against which they are bringing the
claim.  Within the allegations under Count X, Joseph and Billie
Joe do include U.S. Bank in its list of defendants who owe or
owed them a duty but do not allege that U.S. Bank breached that
alleged duty; that if there was a breach, such breach caused
Joseph and Billie Joe any harm; or what constitutes the damage
suffered by Joseph and Billie Joe as a result of any breach by
U.S. Bank.  Thus, this court assumes that Joseph and Billie Joe
did not intend to bring a negligence claim against U.S. Bank.  If
Joseph and Billie Joe did intend to do so, Count X is dismissed
as to defendant U.S. Bank because Joseph and Billie Joe have
failed to adequately plead a cause of action for negligence
against that entity.

29

corrected if [they] enrolled in the loan modification program,
and (iii) by advising [Joseph and Billie Joe] that they did not
qualify for the loan modification program after accepting
payments under that program for approximately fourteen months,
without taking any actions to correct the title problems." *See*
Dkt. No. 136, at ¶ 91.  Joseph and Billie Joe allege that these
acts proximately caused them harm, entitling them to general and
special damages. *Id.* at ¶ 92.

    A.  The Negligence Claims Related to CitiMortgage's
        Representations About its Loan Modification Program Must
        be Dismissed as Time-Barred.

The negligence claims against CitiMortgage under (ii) and
(iii) of paragraph 91 of Count X, relating to the loan
modification program, are barred by the statute of limitations
for negligence actions in Maryland, which is three years. *See*
Md. Code Ann., Cts. & Jud. Proc. § 5-101.  As addressed earlier
herein, the "discovery rule" generally applies to all civil
actions in Maryland, effectively tolling the limitations period
until the claimant in fact knows or reasonably should know of the
wrong committed. *See Windesheim*, 116 A.3d at 962-63 (citing
*Poffenberger*, 431 A.2d at 680); *Martin Marietta Corp.*, 70 F.3d at
771 (same).

Joseph and Billie Joe filed their negligence claim against
CitiMortgage on May 5, 2015. *See* Dkt. No. 136.  Joseph and
Billie Joe allege that in May 2009 CitiMortgage informed them of

the loan modification program and advised them that their
enrollment in that program would allow CitiMortgage to rectify
the title problems caused by the refinancing transactions.  Dkt.
No. 136, at ¶ 31.  They also allege that CitiMortgage advised
them that they ultimately did not qualify for that program in
June 2010, after approximately fourteen months of Joseph and
Billie Joe making reduced payments in accordance with the
program.  *Id.*

At the very latest, by June 2010, Joseph and Billie Joe were
on notice that they did not qualify for the loan modification
program and that CitiMortgage had not rectified their title
problems and would not do so in accordance with that loan
modification program.  By June 2010, Joseph and Billie Joe had
therefore discovered that CitiMortgage's representations
regarding the loan modification program and its utility in
correcting their title were untrue; the three-year statute of
limitations for the negligence claims related to those statements
thus began to run at least as early as June 2010 and had
therefore long ago expired when Joseph and Billie Joe filed their
claim in May 2015.  As such, their negligence claim against
CitiMortgage based on any of CitiMortgage's actions in relation
to the loan modification program is barred by the applicable
statute of limitations.

31

B.   The Negligence Claim Related to CitiMortgage's Failure,
     as Assignee of the *Joseph and Billie Joe Deed of Trust*,
     to Correct Title Must be Dismissed Because
     CitiMortgage's Duties are of a Purely Contractual Nature
     For Which a Negligence Claim Does Not Lie.

The remaining negligence claim against CitiMortgage deals
with CitiMortgage's failure to correct the title problems
resulting from Joseph's and Billie Joe's refinancing arrangements
with other entities.  Joseph and Billie Joe allege that
CitiMortgage, as a loan servicer and perhaps later as an assignee
of the *Joseph and Billie Joe Deed of Trust*, had a duty to correct
the title problems caused by other entities and negligently
breached that duty, causing them injury.  As a preliminary
matter, when CitiMortgage was merely a loan servicer, it had no
contractual privity with Joseph and Billie Joe and had no non-
contractual duty to Joseph and Billie Joe to resolve any title
problems or fraud committed by other entities in the refinancing
transactions.  Moreover, CitiMortgage, when it was only the loan
servicer, would not have had any authority to resolve any title
problems.

When UMS assigned the *Joseph and Billie Joe Deed of Trust*
to CitiMortgage in 2011, and CitiMortgage became the note holder
in addition to the loan servicer, any duty CitiMortgage owed to
Joseph and Billie Joe arose under contract (specifically, the
terms of the note and the *Joseph and Billie Joe Deed of Trust*).
*See Parker*, 604 A.2d at 532 (citing "a long-standing principle of

32

Maryland law that the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between a debtor and a creditor"). As noted in *Jacques v. First Nat'l Bank*, 515 A.2d 756, 759 (Md. 1986), not every duty assumed or implied in contract necessarily becomes a tort duty. Critically, for a tort to arise based on a breach of contract, the defendant must have owed a tort duty of care to protect the plaintiff from injury. *Id.*

In *Parker*, 604 A.2d at 523-33, the court listed the special circumstances that courts have identified as justifying imposing a tort duty on a bank in a lending relationship. *See also Jacques*, 515 A.2d at 759-60. No such special circumstances existed in the relationship between CitiMortgage and Joseph and Billie Joe. Thus, if CitiMortgage had a contractual duty to correct Joseph's and Billie Joe's title problems and it breached that duty, that duty and breach would have formed the basis of breach of contract claim rather than a tort claim.

Moreover, any negligence in encumbering the wrong property was not negligence of CitiMortgage; it was negligence of the parties that handled the refinancing transactions. The assignment did not impose on CitiMortgage a tort liability relating to the title problems caused by the entities involved in the refinancing transactions because CitiMortgage was not a party to those transactions. CitiMortgage merely became the assignee

33

of a promissory note and a deed of trust (whose validity Joseph
and Billie Joe question based on the wrongful acts of Mortgage
Lenders and perhaps UMS).  CitiMortgage has sought to quiet title
to clear up whether the *Joseph and Billie Joe Deed of Trust* is
valid, and can be expected to act in accordance with whatever the
court declares in that regard. CitiMortgage is entitled to
enforce the note and the *Joseph and Billie Joe Deed of Trust*
according to the terms of those documents if both are declared to
be effective.

> C.  Any Negligence Claim Related to CitiMortgage's Failure
>     to Correct Title, if Required by Contract, Would Also be
>     Dismissed as Time-Barred.

Even if CitiMortgage had some duty to correct Joseph's and
Billie Joe's title, contractual or otherwise, and the breach
thereof could form the basis of a negligence claim, such claim
would be barred by the applicable statute of limitations.   A
valid negligence claim is comprised of four elements: 1) a duty
owed by the defendant to the plaintiff, 2) a breach of that duty,
3) an actual and proximate causal relationship between the
defendant's breach of duty and the harm suffered by the
plaintiff, and 4) damages. *Perry v. Asphalt & Concrete Servs.,
Inc.*, 133 A.3d 1143, 1155 (Md. 2016) (citing *Cramer v. Housing
Opportunities Comm'n of Montgomery Cnty.*, 501 A.2d 35 (Md.
1985)); *Van Leer v. Deutsche Bank Sec., Inc.*, 479 Fed. Appx. 475,
481 (4th Cir. 2012) (citing *Jacques*, 515 A.2d at 758).

Joseph and Billie Joe have alleged that CitiMortgage, by virtue of its role as their loan servicer, and perhaps later as the assignee of the *Joseph and Billie Joe Deed of Trust*, had a duty to correct the title problems caused by other entities.  *See* Dkt. No. 136, at ¶ 89.  Joseph and Billie Joe have alleged that CitiMortgage breached that duty by failing to do so.  *Id.* at ¶ 91.  Joseph and Billie Joe have generally stated that "[a]s a direct and proximate result of the negligence and carelessness of [CitiMortgage] as set forth above, plaintiffs suffered general and special damages in an amount to be determined at trial."  *Id.* at ¶ 92.

If CitiMortgage had some contractual duty to Joseph and Billie Joe to resolve the title problems created by other entities, a negligence claim based on that duty would be barred by the statute of limitations.  The statute of limitations for negligence actions in Maryland is three years from the time the action accrues.  Md. Code Ann., Cts. & Jud. Proc. § 5-101.  The discovery rule provides that an action is deemed to accrue when the plaintiff knew or reasonably should have known of the wrong committed by the defendant.  *Martin Marietta Corp.*, 70 F.3d at 771.

It was in February 2008 that Joseph and Billie Joe engaged Mortgage Lenders to carry out the refinancing transactions and negligence allegedly occurred via the *Joseph and Billie Joe Deed*

*of Trust* being prepared to encumber the wrong property.  *See* Dkt. No. 136, at ¶ 24.  If any tort duty existed to encumber the correct property, and to correct any mistake in the resulting deed of trust, that duty rested with Mortgage Lenders and perhaps UMS as the noteholder when the mistake was discovered.  Even if the discovery rule were applied to toll the statute of limitations until Joseph and Billie Joe knew or should have known that the parties involved in the refinancing transactions had caused a mistake in Joseph's and Billie Joe's title to their property, Joseph's and Billie Joe's negligence claim would be time barred; Joseph and Billie Joe were well aware of the mistake by October 2008, when their attorney wrote to Mortgage Lenders, UMS, and CitiMortgage about the problems with the refinancing transactions.  *See id*. at ¶ 30.  The statute of limitations for any negligence claim for breach of the duty to assure that there was correct title therefore began to run no later than October 2008, and expired not later than three years afterwards in October 2011, long before Joseph and Billie Joe in fact pursued their negligence claim.

Even if somehow CitiMortgage could be held liable for the negligence of other entities, the alleged negligence still occurred in 2008 and was discovered in 2008.  As successor to the rights of UMS, CitiMortgage would be entitled to the benefit of the statute of limitations defense that Mortgage Lenders and UMS

36

have regarding breach of the duty to correct title.  The statute
of limitations on Joseph's and Billie Joe's negligence claim
against Mortgage Lenders and UMS was not enlarged by UMS's
transfer of the note and the *Joseph and Billie Joe Deed of Trust*
to CitiMortgage in June 2011.  UMS's assignment to CitiMortgage
did not restart the limitations period for Joseph and Billie Joe.

Even if the assignment to CitiMortgage in June 2011 could be
deemed to give rise to a new duty to correct title, the statute
of limitations would still bar the negligence claims against
CitiMortgage because any breach personally committed by
CitiMortgage would have arisen when the assignment occurred in
June 2011 without CitiMortgage acting to correct the title.[6]
Joseph and Billie Joe did not bring their negligence claim
against CitiMortgage until more than three years after the
assignment, and the claim is therefore time-barred.

Relevant to this analysis is the "continuing harm doctrine,"
which applies in some cases to toll the statute of limitations
regardless of when a plaintiff knew or should have known of a
defendant's tortious conduct.  *See Chevron U.S.A. Inc. v. Apex*
*Oil Co., Inc.*, 113 F.Supp.3d 807, 820 (D.Md. 2015) ("[T]he
continuing harm doctrine tolls the statute of limitations

---

[6]  Indeed, in June 2010 CitiMortgage, in its capacity as
loan servicer, had already failed to cause title to be corrected
when it advised Joseph and Billie Joe that they would not qualify
for the program under which CitiMortgage had promised to take
steps to correct Joseph's and Billie Joe's title problems.

37

regardless of a potential plaintiff's discovery of the wrong."
(quoting *Litz v. Md. Dep't of Env't*, 76 A.3d 1076, 1090 n.9 (Md.
2013))).

The continuing harm doctrine tolls the statute of
limitations when a plaintiff alleges that a defendant has
committed "'continuing violations.'"  *See Litz v. Md. Dep't of
Env't*, 76 A.3d 1076, 1089 (Md. 2013) (quoting *MacBride v.
Pishvaian*, 937 A.2d 233, 240 (Md. 2007)).  If a plaintiff brings
a negligence action for continuing violations by a defendant,
"'every repetition of the wrong creates further liability and
creates a new cause of action, and a new statute of limitations
begins to run after each wrong perpetuated.'"  *Id.* (quoting *Jones
v. Speed*, 577 A.2d 64, 69 n.4 (Md. 1990)).  "The purpose of the
continuing harm doctrine is to avoid punishing a plaintiff
'because one or more [violations] occurred earlier in time' . . .
when such violations 'are continuing in nature.'" *Litz*, 76 A.3d
at 1090 n.9 (quoting *MacBride*, 937 A.2d at 240).  While such a
negligence action might not be barred by the statute of
limitations, damages recoverable through the action would be
limited to those occurring within the three years preceding the
plaintiff's filing of the suit.  *Id.* (citing *Shell Oil Co. v.
Parker*, 291 A.2d 64, 67 (Md. 1972)).

The continuing harm doctrine was meant to toll the statute
of limitations for a plaintiff who suffered repeated violations

of the same kind over an extended period of time, regardless of
when the plaintiff became aware of such violations.  The
continuing harm doctrine applies where a plaintiff alleges that a
defendant committed multiple tortious actions over time,
establishing a tortious course of conduct, and at least one
tortious act took place within the limitations period--not merely
the "continuing ill effects of prior tortious acts[.]" *Bacon v.
Arey*, 40 A.3d 435, 465 (Md. Ct. Spec. App. 2012).  *See also Litz*,
76 A.2d 233 (applying the continuing harm doctrine to toll the
statute of limitations where the defendant had an "ongoing and
continuous" duty to control the discharge of contaminated ground
and surface water and the defendant had "continuously breached
this duty" for over a decade, continuously harming the
plaintiff's property); *Bacon*, 40 A.3d at 469 ("Appellees are not
alleged to be continuinally blocking appellant's access by new
acts daily or periodically.  Rather, the access was allegedly
blocked in the past, and appellant argues that he still incurs
the effects of those acts.  As such, the statute of limitations
is not tolled under the continuing harm theory."); *Chevron U.S.A.
Inc.*, 113 F.Supp.3d at 820 ("The continuing harm doctrine applies
here. . . . Chevron clearly alleges ongoing contamination from
the Pipeline and claims that [the defendant] continues to violate
its obligations in responding to the contamination.  Therefore,
because the discharge and [the defendant's] alleged breaches were

ongoing when Chevron filed the complaint, its contract claims are
not barred by the statute of limitations."); *MacBride v.
Pishvaian*, 937 A.2d 233, 237, 241 (Md. 2007)(declining to apply
the continuing harm doctrine to toll the statute of limitations
where a plaintiff sued a defendant for "damages stemming from the
poor living conditions of the apartment she rented" from him
because while the plaintiff suffered from the "deteriorating
condition of her apartment" over time, the plaintiff pled only
the "continuing ill effects from the original alleged violation,
and not a series of acts or course of conduct that would delay
the accrual of a cause of action to a later date"), *abrogated on
other grounds by Litz*, 76 A.3d 1076.

Here, as in *MacBride*, Joseph and Billie Joe may not avail
themselves of the continuing harm doctrine to overcome the
statute of limitations bar to their negligence claim against
CitiMortgage.  The continuing harm doctrine does not apply to the
negligence claim against CitiMortgage because if CitiMortgage
breached a duty to Joseph and Billie Joe by not correcting their
title problems, it committed that breach once and did so more
than three years before Joseph and Billie Joe filed their claims
against CitiMortgage.  Prior to the assignment in 2011,
CitiMortgage, as merely the loan servicer, had no contractual
privity with Joseph and Billie Joe and had no non-contractual

40

duty to Joseph and Billie Joe to resolve any mistakes or fraud
committed in the refinancing transactions.

In 2011, when UMS assigned the *Joseph and Billie Joe Deed of
Trust* to CitiMortgage, if CitiMortgage had any duty to resolve
the title problems, it breached that duty at that time.[7]
CitiMortgage's failure to resolve the title problems would have
been one breach that continued to impact Joseph and Billie Joe
over time rather than many breaches over an extended period of
time. Plaintiffs who have suffered the former must bring their
claim within the applicable statute of limitations; plaintiffs
who have suffered the latter may receive the benefits of the
continuing harm doctrine. *See Chevron U.S.A. Inc.*, 113 F.Supp.3d
at 820; *Bacon*, 40 A.3d at 469; *MacBride*, 937 A.2d at 235, 237,
241. Joseph and Billie Joe fall into the former category; the
negligence claim against CitiMortgage accrued no later than 2011
when UMS assigned the *Joseph and Billie Joe Deed of Trust* to
CitiMortgage and Joseph and Billie Joe neglected to raise their

---

[7]  The fact that CitiMortgage's relationship with the
plaintiffs continued until CitiMortgage assigned the *Joseph and
Billie Joe Deed of Trust* to U.S. Bank in 2014, and therefore
continued into the three years prior to the filing of the claims
against CitiMortgage is inconclusive in regards to CitiMortgage's
liability. *See Cooper v. United States*, 442 F.2d 908, 912 (7th
Cir. 1971) ("[T]he existence of a continuing relationship does
not insure that a cause of action should be deemed continuous for
purposes of computing the limitations period. The particular
policies of the statute of limitations in question, as well as
the nature of the wrongful conduct and harm alleged, must all be
considered.").

negligence claim against CitiMortgage within the applicable
three-year statute of limitations from that date.  Thus, the
final remaining negligence claim against CitiMortgage must be
dismissed as time-barred.

VIII

CIVIL CONSPIRACY CLAIMS

In Count XII, Joseph and Billie Joe assert a civil
conspiracy claim against many entities, including CitiMortgage
and U.S. Bank.  *See* Dkt. No. 136, at ¶¶ 97-105.  The elements of
a cause of action for civil conspiracy in Maryland are: "1) A
confederation of two or more persons by agreement or
understanding; 2) some unlawful or tortious act done in
furtherance of the conspiracy or use of unlawful or tortious
means to accomplish an act not in itself illegal; and 3) actual
legal damage resulting to the plaintiff."  *Lloyd v. Gen. Motors
Corp.*, 916 A.2d 257, 284 (Md. 2007) (citations and quotation
marks omitted).

Joseph and Billie Joe allege that Mortgage Lenders and three
defendants *other than CitiMortgage and U.S. Bank* agreed, in
connection with the application for and consummation of the
refinancing loan transaction, to accomplish various unlawful
acts.  See Dkt. No. 136 at ¶ 98.  No claim of civil conspiracy
can lie against CitiMortgage and U.S. Bank based on this
allegation because they were not part of the agreement, and no

42

other allegations are pled showing an agreement to which CitiMortgage and U.S. Bank were a party regarding committing any unlawful acts relating to the application for and consummation of the refinancing loan transactions. Nowhere in the complaint are either of these parties alleged to have been involved in or a part of the refinancing loan transactions.[8]

Joseph and Billie Joe further allege that "CitiMortgage and U.S. Bank have engaged in acts in furtherance of the conspiracy to accomplish its ends that continue until the present time which actions have resulted in damages to the Plaintiffs including the possible institution of foreclosure." *See* Dkt. No. 136, at ¶ 99. The civil conspiracy count does not identify what acts CitiMortgage or U.S. Bank took in furtherance of the conspiracy aside from (1) realleging (via incorporation by reference) those acts pled elsewhere that this court has already addressed in dismissing other counts asserted against CitiMortgage and U.S. Bank, and (2) asserting that CitiMortgage and U.S. Bank "were subsequent assignees of servicing rights and the right to declare

---

[8] Moreover, the acts relating to the application for and consummation of the refinancing loans occurred in 2008 and were discovered by October 2008, so any claim based on those acts would be time barred, and would not support a civil conspiracy claim. This follows because a tort of civil conspiracy cannot stand alone. *See Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 665 A.2d 1038, 1045 (Md. 1995) ("'[C]onspiracy' is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." (citation omitted)).

a foreclosure which were only available as a result of the assignment thereof from defendant UMS which had obtained such rights from defendant [Mortgage Lenders]." *See id.* at ¶ 100.  As to these acts, (1) the claims based on acts that are the subject of other counts are being dismissed, and (2) the acts of becoming assignees of rights do not constitute unlawful acts.  In addition, the potential that U.S. Bank will institute a foreclosure proceeding in the future does not establish an actual legal damage as required for a civil conspiracy claim to exist.[9]

Finally, Joseph and Billie Joe allege that "Defendants [Mortgage Lenders] and UMS, through and with their agents and successors defendants Citimortgage and U.S. Bank, agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiffs." *See* Dkt. No.

---

[9]  Even if CitiMortgage and U.S. Bank committed any unlawful acts that are actionable as torts, the assertion of a civil conspiracy claim adds nothing to the tort claims; "the allegation of conspiracy would seem to be immaterial as to the right of action" in that circumstance.  *Kimball v. Harman*, 34 Md. 407, 409 (1871).  *See also Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 639 A.2d at 177 (Md. Ct. Spec. App. 1994), *aff'd*, 665 A.2d 1038 (Md. 1995).   "It is not . . . for simply conspiring to do the unlawful act that the action lies.  It is for doing the act itself, and the resulting actual damage to the plaintiff, that afford the ground of the action."  *Kimball*, 34 Md. at 409.  In pursuing claims for torts committed by CitiMortgage and U.S. Bank, evidence of their having committed those torts as part of a conspiracy might bear on punitive damages, but it would not be necessary to have pled a civil conspiracy claim in order to present such evidence.

136, at ¶ 102.  For three reasons, these allegations fail to state a claim upon which relief can be granted.

First, these allegations of engaging in fraud via a civil conspiracy are cast in conclusory terms that fail to state a claim upon which relief can be granted under the test of *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that conclusory allegations "are not entitled to the assumption of truth").  Second, Joseph and Billie Joe allege a "conspiracy to defraud," (Dkt. No. 136, at ¶ 102) but do not plead a conspiracy with particularity, as required for a claim of fraud pursuant to Fed. R. Civ. P. 9(b).  The factual information required by Rule 9(b) is "often referred to as the who, what, when, where, and how of the alleged fraud." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks omitted).  The conclusory allegations of paragraph 102 do not provide that type of factual information necessary to sustain a claim of fraud.  Third, in opposing the motion to dismiss, Joseph and Billie Joe have failed to identify a viable tort claim for an act committed by either CitiMortgage or U.S. Bank pursuant to an agreement to which CitiMortgage and U.S. Bank were parties.  Under *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 665 A.2d 1038, 1045 (Md. 1995), the tort of civil conspiracy does not exist when there is no other tortious injury to the plaintiff.

45

IX

REQUEST FOR LEAVE TO AMEND

At the hearing on the motion to dismiss, Joseph and Billie Joe, through counsel, sought leave to amend their *Counterclaim, Cross Claim, and Third Party Complaint* (Dkt. No. 136) to the extent that the court determines that any of the counts failed to state a claim upon which relief could be granted.  In the Fourth Circuit, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006); *see also Sciolino v. City of Newport News*, 480 F.3d 642, 651 (4th Cir. 2007).

However, under Fed. R. Bankr. P. 9013, a request for leave to amend must be made by motion.  *See Hall v. Morales*, No. PWG-14-944, 2014 WL 7204918, at *4 (D. Md. Dec. 16, 2014). In responding to such a motion, the adverse party is entitled to show, for example, that the amendment would be futile or would be prejudicial.  In this case, without an actual amended claim attached to the motion that would be difficult for the adverse party to do.  Although Fed. R. Bankr. P. 9013 permits a motion to amend to be made at a hearing, the court has discretion to require a written motion and finds that in this case a written motion should be filed.  The oral motion for leave to amend, made

46

at the hearing on the motion to dismiss, is denied without

prejudice to filing a written motion.  I will permit a motion for

leave to amend to be filed, with the motion to include a copy of

the amended claims that Joseph and Billie Joe propose to advance.

X

ORDER

In accordance with the foregoing, it is

ORDERED that the claims asserted in the *Answer and*

*Counterclaim, Cross-Claim, and Third Party Complaint with Jury*

*Demand* (Dkt. No. 136) against U.S. Bank and CitiMortgage are

dismissed, with leave to file a motion seeking for leave to amend

within 21 days, with the proposed amended claims to be included

as part of the motion.

[Signed and dated above.]

Copies to: E-recipients of notice of orders.